Uhrig, &c. v. Horstman & Sons.

CASE 34—PETITION EQUITY—SEPTEMBER 23.

# Uhrig, &c. v. Horstman & Sons.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. GOODS ACQUIRED BY THE WIFE ARE THE PROPERTY OF HER HUSBAND.—A married woman carried on the business of buying and selling goods, and obtained credit in her own name, as a *feme sole*, by and with the knowledge and consent of her husband. This action was brought by a creditor of the wife to subject the goods held by her to the payment of his debt. A personal judgment was not sought against her. *Held*, that the goods thus acquired by the wife were the property of the husband, and subject to execution against him; that he was personally liable for debts created by the wife in purchasing the goods. The several judgments of the chancellor in overruling the wife's demurrer to the plaintiffs' petition, placing the goods in the hands of a receiver, and subjecting them to sale by a commissioner, *are all reversed.*

2. RIGHTS OF MARRIED WOMEN TO THEIR PERSONAL EARNINGS must be regarded as fixed by statute in this state.

3. A MARRIED WOMAN MAY BE AUTHORIZED TO TRADE, SUE AND BE SUED, ETC., AS A *feme sole,* by a chancellor, on her petition, in the cases provided for in section 4, article 2, chapter 47, Revised Statutes (2 Stanton, 12); and on the joint petition of husband and wife, as provided in the act of February 14, 1866 (Myers's Supplement, page 728.)

4. It is not within the power of the husband by mere assent, or even by an express agreement, to convert his wife's earnings, or the profits of any trade or business he may permit her to carry on, into separate estate, to be used and enjoyed by her to his exclusion.

5. The wife can only be empowered to acquire such an estate from such sources by a court of chancery; and the husband's consent thereto, when necessary, must be given of record in that court.

6. Such powers are in derogation of the marital rights, and the legislature has wisely provided that the wife's right to exercise them must be conferred upon her by a chancellor, and made a matter of public record.

7. SEPARATE ESTATE FOR A MARRIED WOMAN MAY BE CREATED IN THIS STATE by devise, deed of conveyance, sale, or gift in writing or parol by a third party. The husband may permit his wife to set

Uhrig, &c. v. Horstman & Sons.

apart the proceeds of her general estate to her own separate and exclusive use; or he may by an ante-nuptial agreement or post-nuptial settlement, properly executed, and free from fraud as to creditors, give to her a portion or all of his own estate, to be so held and enjoyed by her.

SELBY HARNEY, .

J. S. BUTLER, . . . . . . . . . . For Appellants,

R. W. WOOLLEY, .

CITED

Act of February 14, 1866, Myers's Supplement, 728.

Revised Statutes, section 4, 2 Stanton, 12.

Chitty on Contracts, 16, 17, 39, 40, 42.

Parsons on Contracts, 286, 292, 293, 197.

Smith on Contracts, 312, 313, 289, 290.

Edwards on Receivers, 15, 77, 78, 79.

Civil Code, sections 775, 394, 95.

2 Kent's Commentaries, 144, 150, 152, 148,

2 Kent's Reports, 148, Lean v. Schutz,

1 Aiken, 174, Robertson v. Reynolds.

4 Sanders's Chancery Reports, 485, Hays v. Heyer.

2 Maddox's Chancery Practice, 3d edition, page 292.

4 J. J. Marshall, 449, Peace v. Stewart.

3 Dana, 443, Winslow v. Hardin's executor.

2 B. Monroe, 517, Savage v. Carter.

J. F. & T. W. BULLITT, .

THOMPSON & LAWSON, . . . . . . . . For Appellees,

CITED

Ms. Opinion, December, 1856, Bryan v. Bohannon.

Edwards on Receivers, 77.

Revised Statutes, section 17, article 4, chapter 43.

Schouler's Domestic Relations, 247.

18 B. Monroe, 136, Dean v. English.

14 B. Monroe, 349, Lansdale v. Mitchell.

15 B. Monroe, 172, Trustees of Lebanon v. Forrest.

2 Roper on Husband and Wife, 172.

16 Wisconsin, 480, Todd v. Lee.

2 Story's Equity Jurisprudence, section 1387.

30 Georgia, 386, Oglesby v. Hall.

4 Metcalfe, 84, Maraman v. Maraman.

3 Bush, 156, Bryant v. Bryant.

7 B. Monroe, 293, Jarman v. Wilkinson.

13 B. Monroe, 383, Bell v. Terry
16 B. Monroe, 376, Lillard v. Turner.
16 B. Monroe, 487, Burch v. Breckinridge.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

It appears from the petition in this case that Mrs. A. Uhrig, a married woman, became indebted to appellees in the sum of $799.76 for goods sold and delivered to her; that at the time she purchased the goods, as well as at the institution of this suit, she was, by and with the knowledge, consent, and permission of her husband, Adam Uhrig, carrying on business, buying, selling, and obtaining credit in her own name as a *feme sole;* that she became indebted to appellees as a *feme-sole* trader by and with the consent of her husband; that she had a large stock of goods on hand acquired in the course of her business, and purchased with the profits arising therefrom; that such stock was then with the consent of her husband held in her own name; and appellees claim that they gave her credit on account of such stock and the manner .in which she held.

Although much importance seems to be attached to the fact that Mrs. Uhrig traded as a *feme sole,* and obtained credit from appellees as such, no judgment *in personam* is sought against her. Nor is it alleged or intimated that she had been authorized or empowered to make contracts, sue or be sued as a *feme sole,* or to trade in her own name, by a court of chancery, as provided for by section 4, article 2, chapter 47, of the Revised Statutes, or by the act of February 14, 1866 (Myers's Supplement, 728). The prayer of the petition manifests the fact that a personal judgment was neither expected nor desired.

The court is asked to appoint a receiver to take an account of Mrs. Uhrig's stock of goods, and to adjudge a sale of so much thereof as might be necessary to satisfy their claim. They were entitled to such relief only upon the hypothesis

that the stock of goods was the separate estate of Mrs. Uhrig, and chargeable with the payment of their debts.

Separate estates for married women may be created in this state by devise, deed of conveyance, or sale, or gift either in writing or parol, by a third party. The husband may permit his wife to set apart the proceeds of her general estate to her own separate and exclusive use, or he may by an ante-nuptial agreement or post-nuptial settlement, properly executed and free from fraud as to creditors, give to her a portion or all of his own estate to be so held and enjoyed.

It can not, however, be inferred from the petition that the stock of goods in the hands of Mrs. Uhrig were stamped with the character of separate estate by either of the modes indicated, nor indeed by any mode heretofore distinctly recognized as legally sufficient to accomplish that end by the courts of this state.

It has been held by many of the American courts that if the husband permits his wife after marriage to carry on business on her sole and separate account, all that she earns in trade will be deemed to be her separate property, and disposable by her as such. There is no case in Kentucky in which the doctrine has been carried to that extent. In the case of Basham v. Chamberlain, 7 B. Monroe, 443, the wife at the time of her marriage to an insolvent husband had a small sum of money, which he permitted her to retain; he also permitted her to have some of the profits of her own personal industry; all of which she placed in the hands of a friend, who managed it for her until her money and her savings amounted to the sum of four hundred and fifty dollars. A portion of this sum she appropriated to the purchase of a carriage, the title to which was taken in her own name. The carriage was purchased "not as an article of luxury, but as a means recommended by a physician of regaining her health through the exercise that riding in it would afford her; her health

having been seriously impaired by her domestic labors and fatigue, and its re-establishment being important to enable her to take care of several small children, whose support mainly depended upon her." This carriage was taken under an execution against the husband, and in a contest between the wife and the creditor. The court, while seeming to recognize the doctrine that the personal savings and profits made by the wife might with the consent of the husband be applied to her separate use, held the property subject to the husband's debts, notwithstanding the strong appeal the circumstances of the case made to the sympathies of the chancellor.

Whatever the law may have been in Kentucky anterior to the adoption of the Revised Statutes and the passage of the act of February 14, 1866, it seems to us that these statutes must be regarded as fixing and defining all the rights that married women can have so far as their personal earnings are concerned.

Section 4, art. 2, chap. 47, Revised Statutes, provides that "where the husband abandons the wife and lives separately and apart from her, or abandons her and leaves the state without making sufficient provision for her maintenance, or where he is confined in the penitentiary for an unexpired term of more than one year, the wife may by petition in chancery be empowered to use, enjoy, and sell for her own benefit any property she may *acquire thereafter, or may have acquired since the abandonment or leaving the state;* to make contracts; sue and be sued as a single woman; and also to recover in her own name any property or debts to which she is entitled, or to which the husband is entitled in her right."

The act of 1866 provides "that on the joint petition of husband and wife, filed in a court having chancery jurisdiction within the county of their residence in this state, and on satisfactory evidence, the judge may make an order or decree to *empower* the wife to use, enjoy, sell, and convey for her own

benefit any property she may own *or acquire,* free from the claim or debts of her husband; or to make contracts; sue and be sued as a *feme sole,* or *to trade in her own name,* or to dispose of her property by will or deed."

Among the many rights and privileges these two statutes are intended to secure to married women is that of being protected in the use and enjoyment of the proceeds of their own labor, and of property acquired in the course of any business or trade carried on by them.    Every conceivable contingency in which it is important that these rights should be secured to them, and every state of case in which the husband can rightfully consent that such powers should be conferred upon the wife, are embraced by the terms of these statutes.    The legislature certainly intended to accomplish some end by their enactment, and it can not be supposed that it was merely to recognize by positive statute the existence of certain equitable principles which the courts of chancery had enforced until they had already become essentially parts of our system of jurisprudence.    We conclude that more than this was intended. That the rights of married women were not only to be fixed upon a firmer basis, but to be enlarged, to be specifically set out, distinctly recognized, and adequately secured.

Their right to their individual earnings, and to the profits of such trades or pursuits as their husbands might consent for them to carry on, was no longer to rest upon the uncertain basis of oral testimony, but was to be made certain by the judgment of a court of chancery.

We conceive that under existing laws it is not within the power of the husband by mere assent, or even by an express agreement to that effect, to convert the wife's earnings, or the profits of any trade or business he may permit her to carry on, into separate estate, to be used and enjoyed by her to his exclusion.    The wife can only be empowered to acquire such an estate from such sources by a court of chancery, and the

husband's consent thereto, when necessary, must be given of record in that court. Such powers are in derogation of the husband's marital rights, and the legislature has wisely provided that the wife's right to exercise them must be conferred upon her by a chancellor, and made a matter of public record.

For these reasons we are of opinion that the goods proceeded against were the property of the husband of Mrs. Uhrig, that he was personally liable for the debt, and that the goods could have been taken under execution and sold to satisfy any judgment that might have been rendered against him in the action.

The demurrer of Mrs. Uhrig should have been sustained and the petition dismissed as to her, and the motion to transfer to the Louisville Court of Common Pleas should have prevailed.

It was error to order the goods in question into the hands of a receiver, and improper to render a judgment subjecting them to sale by a commissioner.

The judgment is reversed, and the cause remanded for further proper proceedings not inconsistent with this opinion.